UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VINCENT WHITELEY | : | CRIMINAL NO. |
| Petitioner | : | 3:00-cr-115 (JCH) |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA | : | MAY 9, 2005 |
| Respondent. | | |

**RULING ON MOTION TO VACATE SENTENCE [DKT. NO. 76]**

The petitioner, Vincent Whiteley, moves this court to vacate his sentence under Section 2255 of Title 28 of the United States Code. Whiteley claims that his attorney, Bruce Koffsky, was ineffective on four grounds.[1] First, because Whiteley's offense did not involve actual violence, his attorney should have submitted a memorandum requesting a downward departure from the guideline pursuant to section 5K2.13 of the Sentencing Guidelines Manual. Second, Whiteley's lawyer did not attend Whiteley's presentence report ("PSR") interview and allegedly refused all communication with him between the time he pled guilty on December 14, 2000 and the day of Whiteley's sentencing on June 8, 2001. Third, Whiteley's lawyer failed to properly address alleged errors included in connection with the submitted PSR and took no steps to correct these errors prior to sentencing. Fourth, Whiteley claims his plea was not knowing and voluntary, alleging that his lawyer knew he was medicated and thereby not competent to plea on the day of petitioner's plea agreement hearing, and Attorney Koffsky should have moved to stop the proceedings and called for a psychiatric evaluation.

---

[1] Audrey Felsen, Esq., also represented Whiteley as co-counsel in this case

1

**I.     FACTS**

On May 23, 2001, a federal grand jury returned a two count indictment charging Vincent Whiteley with conspiracy to violate 18 U.S.C. §§ 1029 (a)(2) and 1029 (c) between approximately June 1999 and November 1999.  Count Two of the Indictment alleged that Whiteley violated 18 U.S.C. § 1029 (a) (2) and 18 U.S.C. § 2 during that same period.  On December 14, 2000, Whiteley pled guilty to Count Two of the Indictment pursuant to a written plea agreement

On June 8, 2001, this court sentenced Whiteley to 96 months of imprisonment, three years of supervised release after his discharge from incarceration, and a $100 special assessment.  This court entered judgment on June 13, 2001.

Whitelely filed notice of appeal on June 15, 2001.  The Second Circuit affirmed Whiteley's sentence on January 29, 2002 and issued a mandate on February 20, 2002.  On January 1, 2003, Whiteley filed a petition seeking to move this court to vacate his sentence under Section 2255 of Title 28 of the United States Code

**II.    DISCUSSION**

**A.     Standard of Review**

Whiteley moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255,  which provides:

> [a] prisoner in custody under sentence of a court established by
> Act of Congress claiming the right to be released upon the
> ground that the sentence was imposed in violation of the
> Constitution or laws of the United States, or that the court was
> without jurisdiction to impose such sentence, or that the
> sentence was in excess of the maximum authorized by law, or is
> otherwise subject to collateral attack, may move the court which
> imposed the sentence to vacate, set aside, or correct the

sentence

28 U.S.C. § 2255. In general, such a remedy is available "only for constitutional error, a lack of jurisdiction in the sentencing court, or error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)). This narrow scope of review is intended to "preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources." Garaziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996). Thus, in most circumstances, prisoners seeking habeas relief must prove not only that constitutional violations occurred at trial, but also that such errors caused substantial prejudice or a fundamental miscarriage of justice. See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

Section 2255 also provides,

> [u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255. If the facts, as alleged by petitioner, even if credited, would not entitle him to habeas relief, the motion should be denied, and no hearing would be required. Ciak v. United States, 59 F.3d 296, 307 (2d Cir. 1995). Furthermore, the Second Circuit has long held that a hearing is not required "where allegations are insufficient in law, undisputed, immaterial, vague, conclusory, palpably false or patently frivolous." United States v. Malcom, 432 F.2d 809, 812 (2d Cir. 1970). See also Machibroda v. United States, 368 U.S. 487, 485 (1962) ("[T]he language of [Section

3

2255] itself recognizes that there are times when allegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner."). The court may also expand the record to consider an afffidavit from a defendant's counsel and, after considering the expanded record, deny the section 2255 petition without a hearing. A district court may properly rule on a section 2255 motion without a testimonial hearing where: (1) the allegations of the motion, accepted as true, would not entitle the defendant to relief or (2) the documentary record, including any supplementary submissions, such as affidavits, render a testimonial hearing unnecessary. See Chang v. United States, 250 F.3d 79, 85-86 (2d Cir. 2001) (holding that it was within the district court's discretion to choose a middle of the road that avoided the delay, the needless expenditure of judicial resources, the burden on trial counsel and the government, and perhaps the encouragement of other prisoners to make similar baseless claims that would have resulted from a full testimonial hearing).

Whiteley's basis for all of his claims is ineffective assistance of counsel. Therefore, to obtain relief, he must satisfy the two-part test established by the Supreme Court in Strickland v. Washington 466 U.S. 668 (1984). Pursuant to Strickland, Whiteley must show that his counsel's representation "fell below an objective standard of reasonableness . . . under prevailing professional norms . . . on the facts of the particular case," and "viewed as of the time of counsel's conduct." Strickland 466 U.S. at 668 - 690. Second, the petitioner must show that counsel's deficient performance caused prejudice to the petitioner, that "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Because every ground for relief asserted by Whiteley in his

habeas petition claims ineffective assistance of counsel, each will be evaluated by applying Strickland's two part test.

### B. Defense Counsel's Failure to Request A Downward Departure Pursuant to U.S.S.G. § 5K2.13

Whiteley claims that defense counsel was ineffective by declining to seek a downward departure pursuant to U.S.S.G. § 5K2. 13 (diminished mental capacity). This claim cannot satisfy the second part of the Strickland test.

U.S.S.G. § 5K2.13 provides,

> If the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public.

U.S.S.G. § 5K2.13. Section 5K2.13 expressly authorizes a downward departure "if the defendant committed the offense while suffering from a significantly reduced mental capacity." U.S. v. Silleg, 311 F.3d 557, 562 (2d Cir. 2002). "Significantly reduced mental capacity" is defined as "a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." Id., n. 4 ( citing U.S.S.G. § 5K2.13 (Application Note)).

The record simply cannot support a "reasonable probability" that the result of Whiteley's sentencing would have been different had his counsel pursued a downward departure pursuant to § 5K2.13. The record does not suggest that diminished capacity played any kind of role in the causation of Whiteley's crimes. Furthermore, the record

5

reveals no information upon which this court could conclude that Whiteley would have met two important conditions limiting a defendant's eligibility for a diminished capacity departure:  (1) that his allegedly significant reduced mental capacity was not caused by the defendant's voluntary use of drugs and (2) that his criminal history did not indicate a need to incarcerate the defendant to protect the public.  Rather, as this court's comments made during sentencing clearly indicate, the defendant's criminal history on the record indicated a strong need to incarcerate the defendant to protect the public. See Gov't Ex. 5, at 65.

In conclusion, no evidence exists to suggest that a downward departure was even a remotely viable option for Whiteley.  Therefore, Whiteley could not have possibly been prejudiced by Attorney Koffsky's decision not to pursue it at sentencing, for the record simply cannot support a "reasonable probability" that the result of Whiteley's sentencing would have been different but for his counsel's alleged error. Cf. United States v. Prince, 110 F.3d 921, 926 (2d Cir. 1997) (finding ineffective assistance of counsel where counsel never discussed option of downward departure with client/defendant, and client would have clearly benefitted from the option).  See United States v. Workman, 110 F.3d 915, 920-21 (2d Cir. 1997) (not finding ineffective assistance of counsel because there was no reasonable probability that defendant's sentence would have been different had counsel pursued option).  Because Whiteley cannot satisfy the second part of the Strickland test, his ineffective assistance of counsel claim on this ground must fail.

### C.     Defendant's Guilty Plea Was Not Entered Knowingly and Voluntarily

Whiteley also claims ineffective assistance of counsel on the ground that his

attorney knew he was medicated on the day of sentencing, and therefore should have moved to stop the plea agreement proceedings and called for a psychiatric evaluation. In other words, Whiteley claims that because of the effects of his medication, he did not knowingly and voluntarily accept his plea agreement, and therefore his counsel was ineffective for allowing him to proceed to plea at that time.

The District Court must ensure that a guilty plea "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Panuccio v. Kelly, 927 F.2d 106, 110 (2d Cir. 1991). Furthermore, Fed. R. Crim. P. 11(c) requires that the District Court first inform the defendant on the record of "the nature of the charges against him and of the consequences of the plea." United States v. Maher, 108 F.3d 1513, 1520-21 (2d Cir.1997). In addition, before accepting a plea of guilty, the court must determine that the plea is voluntary and not induced by force or threats or promises apart from the plea agreement. Fed. R. Crim. P. 11(d).

### 1. The Defendant Was Mentally Competent to Plead Guilty

Whiteley appears to challenge his competence to plead guilty. This claim is without merit. A criminal defendant may not waive his right to counsel or plead guilty unless he does so "competently and intelligently." Johnson v. Zerbst, 304 U.S. 458, 468 (1938). The standard for competence to stand trial is whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam). The same standard applies to determining whether a defendant is competent to enter a guilty plea. See Godinez v. Moran, 509 U.S. 389, 396 (1993). Furthermore, a failure by

7

trial counsel to indicate that the defendant had any difficulty assisting in the preparation or in comprehending the nature of the proceedings "provides substantial evidence of the defendant's competence." United States v. Kirsh, 54 F.3d 1062, 1071 (2d Cir. 1995).

Whiteley first alerted this court at the beginning of the plea allocution that he was taking an unspecified medication "for voices" and that he was under a psychiatrist's care. See Gov't Ex. 4, at 5-6 (copy of transcript of plea proceeding). In response, this court specifically inquired into whether the medication affected Whiteley's ability to concentrate, communicate, and understand the proceedings. See id. at 6-7. Whiteley responded that he did not hear voices when taking the medication, that he had been taking the medication for approximately five-to-six months, and that the medication made him tired and sleepy. See id. at 6. However, Mr. Whiteley also explained that he met with counsel several times and was able to listen to and understand counsel. See id.

In response, this court questioned attorneys Koffsky and Felsen about whether they had any difficulty communicating to Whiteley and whether they believed that he was capable of understanding the proceedings. See id. at 9. This court also questioned defense counsel about whether they had any doubt about Whiteley's competence. See id. Mr. Koffsky answered unequivocally "no" and explained that Whiteley was attentive, inquisitive, and demonstrated an understanding of the legal concepts involved. Id. at 9-10.

Whiteley's behavior during his plea allocution also demonstrates his competence to plead guilty. Whiteley responded to the questions asked of him by this court in a

direct and cogent manner. He sought clarification from this court when he did not understand a concept and conferred privately with counsel several times. Defense counsel provided considerable information to Whiteley and met with him to discuss the proposed plea agreement and the Sentencing Guidelines. See Gov't Ex. 4, at 10. Whiteley confirmed that he "had a bunch of questions [for counsel] and he [counsel] answered them." Id.

Moreover, when this court questioned Whiteley about whether he was aware that he was waiving his right to challenge the jury panel if he pleaded guilty, Whiteley sought specific clarification from this court. Id. at 12. Furthermore, when this court questioned Whiteley about whether he understood the waiver of appeal provision in the plea agreement, he specifically informed this court that he did not understand the difference, and when this court explained the difference to him, he demonstrated that he listened to this court and learned from the explanation. Id. at 15-16. Whiteley also sought clarification from this court on specific issues raised during the proceedings, such as the penalty for failure to pay fines. Id. at 18; see also id. at 19; id. at 37-39; and id. at 40-41.

In sum, Whiteley's behavior at the plea allocution, as observed by this court, and his lawyer's opinion of his competence to plead guilty, clearly demonstrates that Whiteley was mentally competent to enter a plea.

### 2. Defendant Understood The Nature Of The Charge To Which He Pled Guilty

This court concluded that "the defendant is fully competent and capable of entering an informed plea; that he understands the nature and consequences of what

he's doing by pleading guilty; that he understands the charges; and that he is acting voluntarily, knowingly and of his own free will . . . that he understands his rights and that his plea of guilty is a knowing and voluntary plea supported by a basis in fact containing each of the elements of the offense." See Gov't Ex. 4, at 43. This conclusion is clearly supported by the record.

> [W]here a defendant is represented by counsel during the plea process and entered his guilty plea upon advice of counsel, the defendant's challenge to the plea based on ineffective assistance of counsel is governed by a two part test. First, the defendant must show that counsel's representation fell below an objective standard of reasonableness, which is determined by the range of competence demanded of attorneys in criminal cases. Second, the defendant must show that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Panuccio v. Kelly, 927 F.2d 106, 108 (2nd Cir. 1991) (quoting Hill v. Lockhart, 474 U.S. 52, 56-59 (1985)).

Whiteley entered his guilty plea pursuant to a written plea agreement. See Gov't Ex. 3. When he and his counsel signed the agreement, Whiteley certified that he understood the charges and proceedings, and the consequences of pleading guilty as they were contained in the plea agreement. Id. Whiteley was represented by counsel before and during the plea hearing. Whiteley conferred with counsel. Furthermore, Whiteley's counsel also signed the plea agreement, acknowledging that he had "read [the agreement] and explained it to [his] client, who advised [him] that he understands and accepts its terms." Id.

In addition to the plea agreement, the transcript of the plea proceeding conclusively demonstrates that Whiteley understood the nature of the charges and the

consequences of his plea. The charges and maximum penalties contained in the indictment were recited to Whiteley. See Gov't Ex. 4, at 16-18. Whiteley affirmatively indicated that he understood the charges and the maximum penalties that applied. See id. He also indicated that he understood his rights as they were explained by this court and further indicated that he understood by pleading guilty he would be waiving those rights. See id. at 15. Both defense counsel and this court detailed the maximum period of imprisonment it could impose as well as the operation of the federal sentencing guidelines. See id. 16-18; 21; 32-34. The plea agreement was signed in open court by the defendant and he indicated he understood its terms. See id. at 19-20.

In reference to a defendant's responses to a Rule 11 allocution, both the Second Circuit and the Supreme Court have observed that "[t]hese solemn declarations in open court carry a strong presumption of verity." Panuccio, 927 F.2d at 110-111 (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)). Therefore, the signed plea agreement and the oral testimony of Whiteley conclusively demonstrate that Whiteley understood the charges against him and the consequences of his plea.

### 3. There Was A Strong Factual Basis For Defendant's Guilty Plea

Before accepting a guilty plea, this court is required to satisfy itself that there is a sufficient factual basis for the plea. Fed. R. Crim. P. 11(f). Generally, "[a] reading of the indictment to the defendant coupled with his admission of acts described in it [is] a sufficient factual basis for a guilty plea as long as the charge is uncomplicated, the indictment detailed and specific, and the admission unequivocal." United States v. O'Hara, 960 F. 2d 11, 13 (2d Cir. 1992) (quoting Godwin v. United States, 687 F. 2d

585, 590 (2d Cir. 1982)).

The record of the plea proceeding establishes that a strong factual basis existed for Whiteley's plea. Whiteley was informed at least three times during the plea proceedings of the charges against him. See Gov't Ex. 4, at 8, 21, 34. Whiteley indicated that he reviewed and understood the plea agreement, which also detailed the charge against him. See id. at 8. That plea agreement contained a signed stipulation of offense conduct in which Whiteley acknowledged his participation in the offense. See Gov't Ex. 3. The Government proffered extensive evidence it would have introduced at trial had the case gone to trial. That proffer established a strong factual basis for the charge to which the defendant pleaded guilty. See Gov't Ex. 4, at 34-37.

In sum, a strong factual basis existed for the Whiteley's plea of guilty.

### 4. Defendant's Plea Was Not Coerced

In the signed plea agreement between Whiteley and the Government, Whiteley acknowledged that his plea was entered knowingly and voluntarily and that no one had forced or threatened him in any way to plead guilty. See Gov't Ex. 3. At his allocution, he again acknowledged that he was pleading guilty of his own free will. See Gov't Ex. 4, at 39-40. The court specifically inquired of Whiteley whether any one had "forced, threatened, or coerced you in any way into entering a plea of guilty." Whiteley unequivocally responded "no." See id. at 40. The record amply supports the conclusion that Whiteley's plea was not coerced.

### 5. No Promises Were Made To Defendant Other Than Those Contained in the Plea Agreement

The plea agreement between the parties, to which Whiteley testified he read and

understood, states that "no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement . . . ." See Gov't Ex. 3. Further, this court asked Whiteley whether any promises were made to the him and about his understanding of the Sentencing Guidelines, and it informed him that the court makes the final decision as to his sentence. See Gov't Ex. 4, at 40, 32-34. Whiteley has not come forward with any evidence of other, undisclosed promises. No promises, other than those set forth in the plea agreement, were made to Whiteley.

      **6.**      **Conclusion**

Whiteley was competent to plead guilty. His plea was entered freely and voluntarily, and was not the product of force, threats or promises. See Fed. R. Crim. P. 11(d). In conclusion, this court denies without hearing Whiteley's claim that his guilty plea was invalid and that his trial counsel was ineffective for not seeking psychiatric evaluation.

    **D.**    **Whiteley's Claim Of Ineffective Assistance of Counsel on Account of Counsel's Alleged Failure to Communicate With Him Before Sentencing; Alleged Failure to Correct Errors in the PSR Report**

Whiteley alleges that counsel "refused all communication" with him from the date of his guilty plea to sentencing, including failing to attend his presentence interview. Furthermore, Whiteley alleges that his PSR contained 52 errors, and that his counsel was ineffective because counsel either did not correct errors or deemed them as unimportant before sentencing.

As a preliminary matter, Whiteley's claim that counsel failed to attend his presentence interview is false. As reflected in attorney Koffsky's affidavit, attorney

13

Felsen traveled to the Garner Correctional Center, where Whiteley was detained pending sentencing, to attend his presentence interview. See Gov't Ex. 10, at Paragraph 12 (Affidavit of Bruce D. Koffsky, Esq.). Whiteley, however, made it clear he did not want Ms. Felsen to participate. See id. at 13. Consequently, she did not do so. See id. Whitley also advised counsel before that interview, in a letter dated February 2, 2001, that he did not want counsel present at that interview. See id. at Ex. B. Therefore, Whiteley's allegation concerning his counsel's failure to attend his pre-sentence interview is both false and duplicitous and cannot be used to support an ineffectiveness claim.

Even if this court were to accept Whiteley's allegations of lack of communication with counsel after his guilty plea and before sentencing, or that counsel failed to address errors in the PSR report, both of these ineffective assistance of counsel claims still fail. Because Strickland admonishes against applying mechanical standards to judge ineffectiveness claims, no set rule exist establishing the number of times counsel must meet with defendant. See, e.g., United States ex rel. Testamark v. Vincent, 496 F. 2d 641, 642-43 (2d Cir. 1974) (rejecting failure to consult claim where attorney conducted an initial interview, "another interview occurred on the eve of trial," and petitioner "was before the court with counsel on various calender calls and was aware of all plea bargaining efforts."); see also Wojtowicz v. United States, 550 F.2d 786, 792 (2d Cir. 1977) ("In evaluating claims of ineffective assistance of counsel it has long been the rule that 'time consumed in oral discussion and legal research is not the crucial test . . . . the proof of efficiency [sic] of such assistance lies in the character of

14

the resultant proceedings, . . . .'"); United States ex. Rel. Bradley v. McMann, 423 F.2d 656, 657 (2d Cir. 1970) (rejecting ineffective assistance of counsel claim even though attorney "did not interview or consult with [defendant] until the day trial was to begin"); Byas v. Keane, 1999 WL 608787 at *5 (holding defendant's meeting with counsel twice for five or ten minutes held sufficient and stating that "[t]o requires that counsel meet with petitioner a specific number of times would effectively establish a mechanical rule in defiance of Strickland.").  Therefore, Whiteley's claim cannot rest on a bare allegation that his counsel did not communicate sufficiently with him.  Rather, a defendant must demonstrate that the alleged lack of communication with counsel prejudiced his defense.  Whiteley does not meet his burden here.

A review of the record in this case, including counsels' filing of a sentencing memorandum, see Gov't Ex. 9, counsels' interviewing of Whitley's family members and relatives, the arguments presented against the Government's motion for an upward departure, and counsel's attempts to explain Whiteley's background and behavior to this court, demonstrates that counsel performed more than adequately at sentencing. See Gov't Ex. 5, at 26-34, 34-37, 40, 43-44; cf. United States v. Patasnik, 89 F.3d 63, 68 (2d Cir. 1996) (rejecting defendant's ineffective counsel claims based on, inter alia, alleged failure to prepare and failure to listen to defendant's version of events, because "in [counsel's] well-researched and articulate statement before the district court, he raised numerous objections to the presentencing report and demonstrated a thorough knowledge of [defendant's] background and the record").  To paraphrase the Second Circuit, where the evidence at sentencing of the defendant's criminal propensities and

15

likelihood of recidivism is staggering, "there is not too much the best defense attorney can do." See Testamark, 496 F. 2d at 643 (holding that "to obtain relief a petitioner must show that there has been gross incompetence of counsel and that this has in effect blotted out the essence of a substantial defense either in the District Court or on appeal") (internal quotation marks and citations omitted).

Furthermore, Whiteley's bare allegations that his PSR contained 52 errors, and that his counsel was ineffective because counsel either failed to correct these errors before sentencing, or deemed them unimportant, also cannot carry its burden under Strickland. He has neither identified these errors, nor come forward with evidence to substantiate that they are errors.

Whiteley merely claims that his assistance of counsel was ineffective because his counsel failed to correct the alleged errors contained in the PSR, deemed them unimportant to sentencing, or both. Whiteley fails to show how Attorney Koffsky's decision not to address the alleged errors rendered his professional judgment on this issue unreasonable. Furthermore, Whiteley fails to show how the alleged deficiency in counsel's performance prejudiced him, and that, but for Mr. Koffsky's failure to address the errors in the PSR, the results of the sentencing would have been different. Because Whiteley makes none of these showings required by Strickland, his Sixth Amendment claim fails on this ground.

### III.    CONCLUSION

For the aforementioned reasons, all of Petitioner's claims of ineffective assistance of counsel are hereby DENIED.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 9th day of May, 2005.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge